IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 17, 2004

## MORRIS PEPPER v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Lincoln County**
**No. S0300026     Charles Lee, Judge**

_____

**No. M2003-02298-CCA-R3-PC - Filed December 10, 2004**

_____

The petitioner, Morris Pepper, appeals as of right from the Lincoln County Circuit Court's denial of his petition for post-conviction relief from his conviction for first degree premeditated murder and sentence of life imprisonment. The petitioner contends that he received the ineffective assistance of counsel at trial. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which THOMAS T. WOODALL and ALAN E. GLENN, JJ., joined.

John H. Richardson, Jr., Fayetteville, Tennessee, for the appellant, Morris Pepper.

Paul G. Summers, Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; William Michael McCown, District Attorney General; and Weakley E. Barnard, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

This case relates to the petitioner's conviction for premeditated first degree murder. As set forth by this court in its opinion on direct appeal, the proof presented at trial reflects that on November 22, 1998, co-defendant Willie Summers and the victim were at Summers' house in Huntsville, Alabama, when the petitioner arrived with a shotgun wrapped in a sheet. Summers' mother refused to let the petitioner enter the house with the weapon. The petitioner placed the shotgun in Summers' car and the three men drove away looking for a Jeep Cherokee to steal. When their search for a Jeep proved unsuccessful, they drove to Taft, Tennessee, to steal car tire rims. The petitioner parked the car, obtained a screwdriver from the glove compartment, and announced that he and the victim would get the rims. Before the two men left, Summers observed the petitioner remove something from the trunk of the car. A short time later, Summers heard four to six gunshots and a man scream. The petitioner returned alone, carrying a shotgun, and said that he "killed that punk son of a bitch." Summers and the petitioner drove to the petitioner's house, where Summers

observed the petitioner hide the shotgun under the hood of an old truck in the yard. The next morning the victim's body was discovered. He had been shot five times.

A Lincoln County jury convicted the petitioner of premeditated first degree murder, and the trial court sentenced him to life imprisonment. After an unsuccessful appeal, State v. Morris Jason Pepper, No. M2000-00883-CCA-R3-CD, Lincoln County (Tenn. Crim. App. Sept. 19, 2001), the petitioner filed a pro se petition for post-conviction relief, alleging the ineffective assistance of counsel and several other grounds. Following the filing of a second petition, counsel was appointed and an amended petition was filed. A hearing was conducted on August 22, 2003, and the trial court denied the petition on September 2, 2003.

At the post-conviction hearing, the petitioner's trial attorney testified that he had practiced law as a criminal defense attorney with the Public Defender's Office for nine years. He said he had met with the petitioner ten to twelve times. He said the petitioner gave him a list of people to interview, which he gave to the investigators who were responsible for conducting preliminary interviews of witnesses. The attorney said that office policy provided that the attorneys spoke only with those witnesses who had information which might have proven useful, as revealed by the preliminary interviews. When the investigators interviewed Sue Eady, the petitioner's alleged alibi witness, she claimed the petitioner was shooting pool at the store where she worked from 6:00 or 6:30 p.m. until after 10:00 p.m. on the night the murder occurred. The attorney said that further questioning by the investigators revealed, though, that the date she was discussing was not the date the crime was committed, but three days later. Consequently, he concluded that her testimony would not support an alibi defense, and he did not meet with her.

The attorney testified that he first learned of Ms. Eady, and the possibility that her testimony may have supported an alibi defense, only six days before trial. In response, he immediately sent investigators to interview her. He said he was prepared to file a motion to continue if she could not be located but this proved unnecessary because, in his opinion, her testimony would have been detrimental to the case. He admitted not filing a notice of alibi, but he said alibi was not the theory of defense. The attorney was shown a statement prepared by Ms. Eady dated March 27, 2000, and testified that he had not seen the document previously or received any telephone messages from her before trial.

Sue Eady testified that she was a personal acquaintance of the petitioner and that she worked for more than ten years at the Super Value convenience store, where the petitioner stopped five or six days a week to shoot pool, drink Sun Drops, and buy Newport cigarettes. Ms. Eady testified that she learned the petitioner was involved in a murder on Wednesday, November 25, 1998, when she watched his arrest on television. She said she was shocked, because the petitioner was in her store on the Sunday evening the victim was killed. She said she recalled the date because she planned to start preparing Thanksgiving dinner that night and wanted to leave work on time. The petitioner stocked the coolers and performed other duties which helped her close the store. Ms. Eady testified that he had arrived at approximately 3:00 or 3:30 p.m. that Sunday afternoon, left twice for about five minutes, and then shot pool from 6:00 or 6:30 p.m. until she closed the store. She said she gave

the petitioner a ride home at 10:15 or 10:20 p.m. Ms. Eady put similar information in a statement dated March 27, 2000, which she had notarized and gave to the petitioner's father, unaware that the petitioner's trial had already taken place. She said that she wanted to speak with someone at the Public Defender's Office or the investigators about the petitioner's whereabouts but that no one called her or questioned her about the case. She said that the petitioner's father gave her two telephone numbers which she called but that no one answered and neither number had an answering machine.

Morris Pepper, Sr., the petitioner's father, testified that he gave the petitioner's trial attorney names of persons who might assist with his son's defense. Mr. Pepper said that, as far as he knew, none of them were contacted. Mr. Pepper said he recalled the evening of November 22, 1998, when he saw the petitioner at Ms. Eady's store at approximately 5:00 p.m. and again at home when Ms. Eady brought him there later that evening. He was uncertain what time the petitioner arrived at home. He said he did not inform the investigators of the petitioner's whereabouts on the evening the crime was committed because they did not ask him. He said he may have told them later on but he was trying to stay out of the case and not get involved any more than necessary. Mr. Pepper testified that he had an argument with the petitioner's attorney during the trial because the attorney did not call Ms. Eady, Eric Wharton, and himself as defense witnesses. He said the attorney informed him that subpoenas were expensive and too much trouble.

Mr. Eric Wharton testified that he frequented the store where Ms. Eady worked during the latter part of 1998 and saw the petitioner there nearly every day. He said he recalled hearing about the murder a few days after it happened. He testified that he may have seen the petitioner at the store on the day the victim was killed, but he was not certain.

Fred Holloway, an investigator with the Public Defender's Office, testified that he was assigned to the petitioner's case and spoke with the petitioner and the petitioner's father on numerous occasions. Mr. Holloway said that Mr. Pepper, Sr., did not provide him with any information useful to the case and that he was unfamiliar with the name Eric Wharton. Mr. Holloway testified that when he received information that Ms. Eady may provide an alibi for the petitioner, he and a co-investigator visited her workplace in Alabama but that she was not there. He did not recall the date he was given her name. He said that on February 8, 2000, he spoke with Ms. Eady by telephone and that she told him that the petitioner was in her store shooting pool when the murder occurred. She also told him that the petitioner arrived in her store approximately 6:00 or 6:30 p.m., stayed a short time, left about 7:00 or 7:30, returned to the store around 8:00 or 8:30, left again about 9:00 p.m., and did not return. Mr. Holloway said he asked Ms. Eady how she recalled the specific date of these events, and she told him she saw his arrest on television the next day. Based on the date the murder was committed, and the dates the petitioner was arrested and his arrest televised, Mr. Holloway concluded that she was referring to a date more than three days after the murder. He said that he reported his findings to the petitioner's attorney, who determined that no alibi defense was possible based upon this information. Mr. Holloway testified the Public Defender's Office had an answering machine, but he did not recall receiving a message from Ms. Eady.

Mr. Mickey Campbell, an investigator with the Public Defender's Office, testified that he worked with Mr. Holloway during the investigation of the petitioner's case. He said that he did not recall the name Eric Wharton but that he spoke with Mr. Pepper, Sr., ten or twelve times. Regarding Ms. Eady, Mr. Campbell said he and Mr. Holloway attempted to contact her within days of learning that she might have important information. He said that they visited her workplace twice and her residence once but were unsuccessful in making contact. He said he was present when Mr. Holloway finally spoke with her by telephone. Mr. Campbell testified that they reviewed the information with the petitioner's attorney and concluded that Ms. Eady could not provide the petitioner with an alibi.

Recalled as a witness, the petitioner's attorney denied stating that witness subpoenas were too expensive or troublesome to use. He testified that during the preparation for trial, the petitioner claimed only that he had nothing to do with the crime and did not give him much information. He said the petitioner denied having a shotgun and knowledge how his name appeared on the registration form for the weapon or how it became located under the hood of his car. The petitioner also denied going to the Summers' home, being with Summers, and knowing where he was on the night of the crime. The attorney said he spoke with the investigators daily during their search for Ms. Eady, but, with regard to her testimony, he believed it would have only damaged the petitioner's case. He said he explained this to both the petitioner and his father.

After the hearing was concluded, the trial court found the following: The Public Defender's Office represented the petitioner for more than twelve months before trial and, during this time, all witnesses known to the Office were interviewed, or an attempt was made to do so, which constituted more than adequate investigation. Counsel met with the petitioner to discuss the investigator's findings and trial strategy, but the petitioner initially maintained that he could not recall his whereabouts at the time of the crime. Six days before trial, the petitioner gave the name of a potential alibi witness, Ms. Eady, to counsel and he made attempts to contact her, which resulted in the telephone conversation between Ms. Eady and Mr. Holloway. Based on the information she gave him at that time, it was reasonable to conclude that Ms. Eady was mistaken about the date she saw the petitioner in her store. This information was communicated to the petitioner who did not object to proceeding to trial, during which Ms. Eady was not called as a witness for tactical reasons. Six weeks after the trial concluded, Ms. Eady gave a notarized statement to the petitioner's father.

The trial court concluded that if trial counsel had been furnished the name of Ms. Eady at the inception of the investigation and she had not been contacted until two days before trial, a new trial might have been granted. It found inconceivable the petitioner's inability to recall his whereabouts on the night of the crime, whereas he was arrested three days after the murder and knew that this information would be critical. It also found inconceivable the petitioner's father's failure to disclose that he had information concerning the petitioner's whereabouts on the night of the murder. The trial court stated that because the existence of Ms. Eady was not made known until the eleventh hour, it understood why counsel was dubious and that the fact that the witness was mistaken concerning the dates would explain the lack of need for further investigation. The trial court said that assuming Ms. Eady's testimony at trial would have mirrored hers given at the post-conviction hearing, there was

no assurance that a continuance would have been granted or that her testimony would have been heard by a jury, given Rule 12.1, Tenn. R. Crim. P., requiring notice of an alibi defense. The trial court found counsel's decision not to call Mr. Pepper, Sr., or Ms. Eady was a tactical one, which the court would not second-guess unless the choice was uninformed because of inadequate preparation. The court determined that the petitioner did not prove his allegations by clear and convincing evidence and concluded that the petitioner did not receive the ineffective assistance of counsel.

The petitioner now appeals the trial court's denial of his petition, arguing that his attorney's failure to present testimony from the alibi witness, in addition to other witnesses, constitutes ineffective assistance. The state responds that the trial court properly denied the petition because the attorney's assistance at trial was not deficient and the petitioner failed to show prejudice. We agree with the state.

The burden in a post-conviction proceeding is on the petitioner to prove his grounds for relief by clear and convincing evidence. T.C.A. § 40-30-110(f). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). Because the trial court's conclusions are based on mixed questions of law and fact, we review those conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457.

Under the Sixth Amendment, when a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72, 113 S. Ct. 838, 842-44 (1993). A showing that counsel's performance falls below a reasonable standard is not sufficient to establish the claim; rather, the petitioner must also show that but for the substandard performance, "the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. The Strickland standard applies, as well, to the right to counsel under Article 1, section 9 of the Tennessee Constitution. See State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989). A fair assessment of an attorney's performance necessarily requires that every effort be made to eliminate the distorting effects of hindsight, especially when evaluating tactical decisions. Strickland, 466 U.S. at 689, 104 S. Ct. at 2065; Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). In addition, the petitioner is not entitled to second-guess a reasonably based trial strategy or criticize a sound, but unsuccessful, tactical decision made during the course of a proceeding. Adkins v. State, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). This deference to counsel's tactical decisions is dependent upon a showing that the decisions were informed ones, based upon adequate preparation. Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

The petitioner's claim is based on his attorney's failure to call Ms. Eady as an alibi witness and other "certain witnesses" who would testify in his behalf. As for Ms. Eady, we agree with the trial court that waiting until six days before trial to disclose an alibi witness to his attorney creates suspicion and, as a practical matter, some procedural problems. The petitioner had ample

opportunities to speak with counsel before trial and more than a year to ponder his whereabouts on the night of the crime. We conclude that the investigation of petitioner's alibi claim was adequate, based on the short span of time remaining before trial, and that his attorney's decision to forgo calling Ms. Eady to testify was a tactical one, which did not constitute substandard performance given the information that he received from the investigators. According to Ms. Eady's initial statements during the telephone interview with Mr. Holloway, she could not testify as to the petitioner's whereabouts on the night the crime was committed and, thus, an alibi defense was not possible based upon her testimony.

As for the "other witnesses" not called by the attorney, the petitioner's brief names only his father, Morris Pepper, Sr., whose testimony would have corroborated Ms. Eady's testimony concerning the whereabouts of the petitioner at different times on the night the murder was committed. As with the information withheld by Ms. Eady, however, Mr. Pepper's knowledge of his son's whereabouts during those critical hours remained undisclosed to the petitioner's attorney for an extraordinary period of time. In reviewing whether the attorney's decision not to present Mr. Pepper's testimony was an unreasonable tactical strategy, we are persuaded by the trial court's estimation of Mr. Pepper's value as a witness as "easily confused by a rigorous cross examination . . . and would have made a poor witness for his son." We hold that the petitioner's attorney provided the effective assistance of counsel.

Based upon the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
JOSEPH M. TIPTON, JUDGE